PIONEER NATIONAL TITLE INSUR-
ANCE COMPANY, a California
Corporation, Plaintiff,

v.

**James C. SABO, Defendant.**

Superior Court of Delaware,
New Castle County.

Submitted Jan. 11, 1978.

Decided Jan. 17, 1978.

Walter L. Pepperman, II of Morris, Nichols, Arsht & Tunnel, Wilmington, for plaintiff.

Howard M. Berg of Berg, Aber, Heckler & Wyatt, P.A., Wilmington, for defendant.

TAYLOR, Judge.

On August 24, 1972 plaintiff issued a title insurance policy covering property in Sussex County, Delaware relying upon certification by defendant to plaintiff that the title to the property was good and merchantable title. In fact, the property had been sold for delinquent taxes on April 13, 1972.

On November 19, 1973 defendant notified plaintiff of the error.[1] This suit was filed on November 18, 1976.

I

The issue here is whether the applicable 3-year statute of limitation, 10 Del.C. § 8106, had run before suit was filed.[2] If the 3-year period began to run at the time of the occurrence, the filing was not timely. If that period began to run at the time of discovery, the filing was timely.

The time of discovery rule has been applied in this State in non-medical professional tort litigation in three cases.[3] *Isaacson, Stolper & Co. v. Artisan's Savings Bank,* Del.Supr., 330 A.2d 130 (1974), a decision by the Delaware Supreme Court, involved an error by an accountant made in a tax matter. *Child, Inc. v. Jan Rodgers,* Del., 377 A.2d 374 (1977), as here, involved an error by an attorney with respect to property title. *Pioneer National Title Insurance Co. v. Sabo,* D.C., D.Del., 432 F.Supp. 76 (1977), involved the same parties

---

1. In 1974 an ejectment action was brought by the buyer who purchased at the time plaintiff issued its title insurance policy against the buyer at the tax sale, and this Court has held the tax sale invalid and that decision is on appeal before the Delaware Supreme Court.

2. 10 Del.C. § 8106 reads:
   "No action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover damages for the detention of personal chattels, no action to recover a debt not ·evidenced by a record or by an instrument under seal, no action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action; subject, however, to the provisions of §§ 8108–8110, 8119 and 8127 of this title."
   The facts mentioned in the last line above are not pertinent here.

3. Recently, the *Layton* principle has been extended to a non-professional tort, a defective septic tank disposal system. *Rudginski v. Pullella,* Del.Super., 378 A.2d 646 (1977).

as in this suit and essentially the same issues. These cases applied the principle announced in *Layton v. Allen,* Del., 246 A.2d 794 (1968), that where the injury was inherently unknowable and the injured party had relied upon professional expertise of the wrongdoer and was blamelessly ignorant, the limitations period commenced to run when the person had reason to know that a wrong had been committed. *Layton* involved malpractice by a physician. *Isaacson* extended the concept to an accountant and tax specialist. *Child* and *Pioneer* extended it to a lawyer.

It is true, as defendant contends, that in *Isaacson* the Supreme Court found that more than three years had run after defendant's professional error first manifested itself and therefore suit was barred regardless of which method was used to determine the commencement of the 3-year period. However, the process used by the Court in reaching that conclusion involved the application of the concept of *Layton* and rested upon that reasoning in rejecting the time of the occurrence concept. Hence, the reasoning of *Isaacson* should not be relegated to the category of obiter dictum. However, *Child, Pioneer* and *Rudginski* applied the time of discovery concept to permit suit to be pursued in non-medical claims, and *Layton* and *Hamilton v. Turner,* Del.Super., 377 A.2d 363 (1977) held similarly with respect to medical claims.

Defendant contends that a requirement to qualify under the *Layton v. Allen,* supra, line of cases is that the statutory period based on time of occurrence must have run before discovery. It is factually true that in *Layton, Isaacson* and *Child* the discovery was more than the statutory period after the wrong occurred. But it is not true in *Hamilton, Pioneer* and *Rudginski,* where discovery was within that period.

Nothing in the Delaware cases indicates an intention to apply the *Layton* principle only to cases barred by the date of occurrence concept before discovery. This contention falls when consideration is given to the language of *Layton* and its following cases. *Layton* considered squarely the question of when the statutory period commemced to run. It did not deal with the question of extending the period of limitation. If, as *Layton* held, the statutory period does not commence until discovery, there is no prior period against which to test the applicability of the standard. The applicability test is that which was stated above and it applies without regard to the time lapse after the occurrence.

Applying this contention (and using for purposes of this example a 3-year limitation period) would mean that a plaintiff, having discovered the wrong 2 years and 11 months after the occurrence, must file within 1 month after the discovery (3 years after the occurrence) whereas if he discovered the wrong 3 years and 1 month after the occurrence, suit could be filed up to 3 years after discovery (6 years and 1 month after the occurrence). Under this reasoning an injured party who had the good fortune of later discovery would be afforded more time after discovery to sue than the party who discovered the wrong at an early date. The objective of a statute of limitations is to provide a limitation on the time for asserting claims and it is intended for the protection of the defending party. It hardly serves that objective to accord a longer filing period for a later discovery and a shorter period for an earlier discovery. I find no basis for applying such a policy.

The statute (10 Del.C. § 8106) provides that the limitation period is computed "from the accruing of the cause of such action." Ordinarily, this phrase is construed to refer to the date of the occurrence. *Layton v. Allen,* supra. In the case of situations which qualify under the *Layton* line of cases, the same phrase is construed to mean the date of discovery. Under this test there can be no distinction between an instance where discovery occurs more than 3 years after date of occurrence and one where discovery occurs less than 3 years after date of occurrence. Suit may be brought at any time during the full period specified in the statute, computed from the appropriate beginning date, i. e., date of occurrence or date of discovery,

depending upon which category the case falls into.

Defendant contends that a hardship test should be applied to decide whether a plaintiff should have the benefit of time of discovery. Defendant points out that in *Isaacson* the Court was not called upon to consider the fairness of applying the time of discovery concept in that situation because the suit was barred even based upon that concept. Defendant contends that *Child* is sustained under the fairness concept because of the death of the attorney shortly before the expiration of the statutory period computed under time of occurrence method and the fact that suit was brought five months thereafter. Hence, defendant contends that *Child* is the only non-medical Delaware Court decision which has permitted filing after the running of the period from time of occurrence and that involved singular considerations of fairness because of death of the attorney.

In this connection, defendant points out that plaintiff discovered the wrong only 15 months after the occurrence and 21 months before the expiration of the 3 years from the date of occurrence. Hence, says defendant, no exception was needed to afford defendant a reasonable opportunity to sue and no hardship existed.

What defendant is seeking is to apply the time of discovery concept only on a case-by-case basis depending on circumstances which are singular to that case based only on the need of plaintiff for a reasonable time to file. That proposition is not supported by *Robinson v. Weaver,* Tex., 550 S.W.2d 18 (1977), upon which defendant relies. A reading of that case shows that its holding was intended to be applicable generally to cases of alleged misdiagnosis to which it refused to apply the time of discovery rule. A review of *Layton* and *Isaacson* shows that the Delaware Supreme Court intended to make the time of discovery concept applicable to a class of cases involving services in particular professions which resulted in injuries which were inherently unknowable of which the injured par-

ty was blamelessly ignorant. There is no doubt that in order for a case to be within the concept, its facts must show inherent unknowability of the injury and blameless ignorance of the injured party in reliance upon the professional skill of the wrongdoer. These are the factual requisites to come within the time of discovery concept which are referred to in *Isaacson.* Having factually met those qualifications, the time before which suit is barred commences with time of discovery and continues until the statutory period of time expires.

Defendant also contends that the time of discovery concept should not result in the running of a full statutory period from discovery, but merely should open the door to permit filing for a reasonable period after discovery. Defendant finds support for this proposition in the dissenting opinions in *Fox v. Passaic General Hospital,* N.J., 363 A.2d 341 (1976) and *Moran v. Napolitano,* 71 N.J. 133, 363 A.2d 346 (1976). This might be an alternative rationale for permitting suit after late discovery, but it is not generally accepted, cf. 80 *A.L.R.2d* 368, and, as discussed above, the Delaware cases accomplish the result by deferring the commencement of the statutory period to the time of discovery rather than by extending permissible filing beyond the statutory period from the date of occurrence.

If the result of the *Layton* test is harsh, this is a matter which should be addressed by the legislature. This has been done in the instance of medical malpractice. Cf. 60 Del. Laws, Ch. 373.

Defendant argues that in applying the statute of limitations in this case consideration should be given to the proper allocation of risk of liability between a title insurance company and the attorney who searched the title, the contention being that the title insurance company receives a substantial fee for risk which it expects to pass on to the searching attorney in case of an error in title search. Whether the title insurance premium does not properly reflect the limited risk of the title insurance company is

properly a matter of regulation and action by the Insurance Commissioner. Statutes of limitation do not generally differentiate among plaintiffs. Where a statute of limitations applies to a particular type of wrong, absent valid statutory provision providing different treatment for different classes of plaintiffs, I find no basis for applying it differently to different plaintiffs where the same type of wrongdoing is involved.

In view of the conclusion reached above, it is not necessary to review other contentions made in the briefs.

Defendant's motion to dismiss based upon statute of limitations is denied.

IT IS SO ORDERED.